Filed 5/30/24  In re J.G. CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re J.G., a Person Coming Under the Juvenile Court Law. | B326648 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>T.D.,<br><br>Defendant and Appellant. | (Los Angeles County Super. Ct. No. 18CCJP00878C) |

APPEAL from orders of the Superior Court of Los Angeles County, Jean M. Nelson, Judge.  Reversed.

Suzanne M. Nicholson, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Veronica Randazzo, Deputy County Counsel, for Plaintiff and Respondent.

T.D. (Mother) appeals the juvenile court's order assuming dependency jurisdiction over her infant son, J.G. (Minor). We are asked to decide whether substantial evidence supports the jurisdiction finding, which rests on the court's conclusion that Minor was at risk from Mother's methamphetamine abuse that led to a prior finding of dependency jurisdiction over one of Minor's siblings.[1]

## I. BACKGROUND

### A. Prior Pertinent Dependency History

In 2018, a juvenile court asserted dependency jurisdiction over Mother's daughter, H.R., after sustaining allegations that Mother had a history of engaging in violent altercations in H.R.'s presence. During the investigation into those allegations, Mother admitted to a social worker from the Los Angeles County Department of Children and Family Services (the Department) that she had smoked crystal methamphetamine in the past; she, however, denied drug use at the time. The juvenile court ultimately terminated dependency jurisdiction over H.R. and granted her father sole legal and physical custody of the child.

In 2020, the Department filed a dependency petition concerning Mother's son, D.D., based (among other things) on evidence that he tested positive for amphetamines at birth and that Mother was an abuser of amphetamines and benzodiazepines who likewise tested positive for those substances the day D.D. was born. Mother pled no contest to the petition's allegations and the juvenile court took jurisdiction over D.D.

---

[1]     No findings were sustained as to Minor's father, B.G. (Father), and he is not a party to this appeal.

2

Mother was ordered to drug test weekly and to complete a drug and alcohol program of at least six months' duration. In April 2022, the juvenile court terminated reunification services for Mother in D.D.'s case.[2]

### B. These Dependency Proceedings
### 1. The Department's initial investigation

In May 2022, a few days after Mother gave birth to Minor, the Department opened an investigation into his well-being. Minor was in the NICU being treated with precautionary antibiotics due to an aspect of Mother's medical history. Minor was doing well, and Mother was attentive when she visited. Mother and Minor tested negative for substances at Minor's birth, and there were no concerns based on Mother's actions at the hospital. The Department was apparently alerted to Minor's birth because Mother told hospital staff she had two children but discussed only one.

The Department interviewed Mother at the NICU. Mother did not understand why the Department was present or involved. She stated she was in compliance with court orders, the baby was well, and she was not under the influence. Mother also said the Department could not use her past against her.

Paternal grandmother V.H. (Paternal Grandmother), who was also at the NICU, reported Mother and Father were living with Paternal Grandmother and Mother was doing fine.

---

[2] Mother filed a section 388 petition in D.D.'s case in October 2022, alleging changed circumstances. The juvenile court granted a hearing on the petition, but the record in this appeal does not reveal how the court ultimately ruled on that petition.

3

Paternal Grandmother also said she drove Mother to her court-ordered services.

When the Department social worker spoke to Father the following day, he denied having concerns regarding Minor's safety or wellbeing. Father claimed Mother was no longer using drugs and was attending services.

The social worker assigned to D.D.'s case, however, reported Mother had not been compliant with services and had been inconsistent in demonstrating behavioral changes to address the reasons the Department had an open case regarding D.D. The social worker reported the biggest concern was Mother not taking responsibility for her actions and lacking insight both as to the reasons her children were removed from her custody and as to how her actions affect their safety and well-being.

Minor was released from the hospital and into Mother and Father's care. The same day, the Department social worker asked them to test for drugs and alcohol. They were not able to test at the designated site that day, but they tested negative the next day.

A Department social worker also undertook additional investigation concerning Mother's progress with sobriety. Mother had been enrolled in a drug and alcohol program since November 2021. A representative from the program agreed Mother needed to increase attendance and participation in services but also stated Mother had increased her attendance in the prior couple of months. Paternal Grandmother reported she had not seen Mother using drugs in her home.

In July, Father reported having some relationship issues with Mother. He said he wanted Minor to remain in Paternal Grandmother's home, but he claimed Mother was disrespecting

household rules and threatening to leave with Minor. Around the same time, Mother asked the Department social worker for housing resources.

### 2. *The initial petition*

Although the Department found Minor was in good health and recommended he remain in his parents' care, it nonetheless deemed him to be at "high" risk of future harm and neglect.

The Department filed a two-count petition in July 2022, asking the juvenile court to assume jurisdiction over Minor under Welfare and Institutions Code section 300, subdivisions (b)(1) and (j).[3] The petition alleged in the subdivision (b) count that Minor was at substantial risk of suffering physical harm due to his young age and Mother's history of abusing amphetamines and benzodiazepines. The subdivision (j) count asserted Minor was at risk of harm in light of Mother's inability to care for his half-sibling, D.D., as a result of her history of substance abuse. At the detention hearing, the juvenile court released Minor into his parents' care under the Department's supervision and ordered family preservation services for both parents, including drug testing.

### 3. *Further investigation*

Over the ensuing months, the Department continued to monitor the family. In September 2022, Mother claimed Father hit her in the face in April 2021 (before the initial detention hearing for Minor) and in July 2022 (after). Mother stated she

---

[3] Undesignated statutory references that follow are to the Welfare and Institutions Code.

reported at least one domestic violence incident to the police and claimed some of the violence had been witnessed by paternal relatives. Mother also said that, as a result of a recent incident of abuse, Mother had taken Minor and left Paternal Grandmother's home. Mother planned to stay with a friend until the social worker could help her get into a program for people with children.

Discussing the drug abuse allegations, Mother asserted she did not think she should be testing anymore because she had by then completed her drug and alcohol program. Mother said the last time she used any drugs was in November 2020, on the day D.D. was born. Mother stated it was not right that the Department kept bringing up her prior drug use and asserted the hospital had given her benzodiazepines for pain.[4]

The social worker also reviewed Mother's recent drug test results and learned Mother tested negative six times and missed nine tests during the period from May 24, 2022, through August 26, 2022.[5] The social worker also verified Mother graduated from her six-month drug and alcohol program in August 2022 and was enrolled in domestic violence classes.

---

[4] The detention report from D.D.'s dependency case reflects that a doctor at the hospital where Mother delivered D.D. told a Department social worker that benzodiazepines are typically medications that treat anxiety, such as Ativan or Valium.

[5] The negative tests occurred on June 6, June 9, June 15, July 1, July 14, and August 11, 2022. The missed tests occurred on May 24, June 2, June 8, July 8, July 21, July 27, August 5, August 17, and August 26, 2022.

The social worker also interviewed other family members. Father expressed concern about Mother's substance abuse, though he had never seen Mother use drugs. Father denied all of the allegations of domestic violence. Paternal Grandmother said she had no concerns about Mother using drugs or alcohol but denied Mother's allegations that Father had been abusive. Paternal Grandmother was, however, concerned that Mother did not know how to parent a baby (giving, as an example, Mother's decision to feed Minor applesauce when he was two months old). S.H. (Paternal Great Aunt) also expressed concern about Mother's parenting ability, opining she did not know how to take care of a baby and did not want to change his diaper. She claimed Mother had given Minor baby food when he was only a few days old.

Mother denied giving Minor baby food, but she admitted she had given him baby cereal. When the social worker asked if Minor's doctor had approved of Mother doing so, Mother stated he was supposed to start at 6 months, but Minor was still hungry when she gave him bottles so she gave him a little bit of baby cereal as well.

In October 2022, the Department social worker reviewed Mother's drug tests for the period from August 29, 2022, through October 18, 2022. Mother tested negative four times and missed five tests.[6] Mother told the social worker she missed one test because she was on her period and missed two other tests because she was ill.

_____

[6] The negative tests occurred on September 8, September 12, September 28, and October 5, 2022. The missed tests occurred on August 29, September 9, September 20, October 12, and October 18, 2022.

7

Mother additionally told a social worker that she had not had any contact with Father since leaving Paternal Grandmother's home. Father, on the other hand, said he spoke to Mother regularly but he had not seen Minor since Mother left Paternal Grandmother's home.

Also in October 2022, the Department filed an amended dependency petition that added a new count, designated b-2, alleging Minor was at substantial risk of serious physical harm from Father's domestic violence against Mother. By December of that year, Mother and Father had a schedule in place pursuant to which Mother cared for Minor during the week and Father cared for him over the weekend. The Department social worker reported Minor appeared to be developing well.

Mother stated there had been no issues with Father since she moved out of Paternal Grandmother's home. Mother continued to participate in domestic violence classes, and she had recently contacted her individual therapist to resume services. The social worker again reviewed Mother's drug test results. During the period from October 27, 2022, through November 21, 2022, Mother appeared for, and tested negative at, all five scheduled tests.[7] Though the Department submitted requests to relevant police departments, it did not receive any police reports confirming Mother's assertions of domestic violence.

### 4. The jurisdiction hearing

The juvenile court held a jurisdiction hearing in December 2022. The court sustained counts b-1 and j-1, regarding Mother's

---

[7] The negative tests occurred on October 27, November 3, November 7, November 14, and November 21, 2022.

8

substance abuse and dismissed count b-2, regarding the domestic violence allegations.  The court observed it was "very true" that Mother had made progress, but the court believed Mother had a "long history of a number of different problems" including substance abuse and an "inconsistency in her ability to follow through on services."  The court opined methamphetamine was "a type of drug that a parent can avoid for years and then they go back to it for some reason" and expressed concern that Mother was not testing consistently until recently.  The juvenile court reiterated Mother was "making progress" but explained "the period of sobriety I need to see for somebody who's had her reunification services terminated in the past . . . needs to be much more substantial than what we have here, where by September of this year I'm still worried she is not testing regularly.  This is not to minimize Mother's progress.  It just means, given the number of risks, her history, what the Department shows, I need to be very sure she can maintain her sobriety, and I don't have that."

The court released Minor to Mother and Father's care, conditioned on Mother and Father not living together.  Mother was ordered to participate in random drug and alcohol testing and individual counseling.

## II.  DISCUSSION

Although the substantial evidence standard of review is deferential (*In re R.T.* (2017) 3 Cal.5th 622, 633) and section 300, subdivision (j) provides the broadest grounds for asserting dependency jurisdiction over a child (*In re I.J.* (2013) 56 Cal.4th 766, 774), there is still insufficient evidence of a substantial risk that Minor would be abused or neglected within the meaning of

9

that subdivision.[8]  There were no concerns with Minor at birth that initially prompted the Department's investigation.  Then, over the ensuing six-plus months when Minor remained in Mother's (and Father's) care, Mother repeatedly tested negative for methamphetamine use, she completed a drug program, the Paternal Grandmother reported no reason to believe she was again using drugs, and Minor continued to be in good health and doing well.  The best that can accordingly be said for the juvenile court's jurisdiction finding is that Mother had a history of methamphetamine abuse, had several earlier missed drug tests and, in the opinion of one social worker assigned to D.D.'s case, lacked "insight."  (She also fed Minor some solid food apparently before that was indicated, but that was not an alleged ground for jurisdiction in the dependency petition and would not alter our conclusion in any event.)  Those facts, in our view, are not substantial evidence of a risk of neglect or abuse that can support jurisdiction here.

### A.     Section 300, Subdivision (j)

Section 300, subdivision (j), authorizes a juvenile court to assume dependency jurisdiction over a child when the following two requirements are met: "[t]he child's sibling has been abused or neglected, as defined in subdivision [(b)(1) or other

---

[8]     Because the basis on which a juvenile court can assert jurisdiction under section 300, subdivision (j), is broader than that under section 300, subdivision (b)(1), our analysis of the sufficiency of the evidence focuses on the subdivision (j) finding and we need not discuss the juvenile court's subdivision (b)(1) finding.

subdivisions], and there is a substantial risk that the child will be abused or neglected, as defined in those subdivisions." (§ 300, subd. (j).) Under subdivision (b)(1), a child is a dependent child when "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of . . . [¶] [t]he failure or inability of the child's parent or guardian to adequately supervise or protect the child . . . ." (§ 300, subd. (b)(1)(A).) Our Supreme Court has recently emphasized that section 300, subdivision (b)(1) "allows for dependency jurisdiction based on substance abuse only when this abuse leads to an 'inability' on the part of a parent or guardian 'to provide regular care for [a] child' [citation] that causes the child to suffer, or creates 'a substantial risk that the child will suffer, serious physical harm or illness' [citation] . . . ." (*In re N.R.* (2023) 15 Cal.5th 520, 540.) "[E]xcessive use of drugs or alcohol [that] has other negative manifestations[, on the other hand,] . . . does not provide a basis for jurisdiction . . . ." (*Ibid.*)

Our Supreme Court has also explained that, "[u]nlike the other subdivisions, subdivision (j) includes a list of factors for the court to consider: 'The court shall consider the circumstances surrounding the abuse or neglect of the sibling, the age and gender of each child, the nature of the abuse or neglect of the sibling, the mental condition of the parent or guardian, and any other factors the court considers probative in determining whether there is a substantial risk to the child.' (§ 300, subd. (j).) 'The "nature of the abuse or neglect of the sibling" is only one of many factors that the court is to consider in assessing whether the child is at risk of abuse or neglect in the family home. Subdivision (j) thus allows the court to take into consideration factors that might not be determinative if the court were

11

adjudicating a petition filed directly under one of those subdivisions.  [¶]  The broad language of subdivision (j) clearly indicates that the trial court is to consider the totality of the circumstances of the child and his or her sibling in determining whether the child is at substantial risk of harm, within the meaning of *any* of the subdivisions enumerated in subdivision (j). The provision thus accords the trial court greater latitude to exercise jurisdiction as to a child whose sibling has been found to have been abused than the court would have in the absence of that circumstance.'  [Citation.]"  (*I.J.*, *supra*, 56 Cal.4th at 774.)

>    **B.     *Substantial Evidence Does Not Support the Juvenile Court's Dependency Finding***

It is, of course, undisputed D.D. was adjudged a dependent of the juvenile court due to Mother's substance abuse and D.D. and Minor were relatively close in age (D.D. is approximately 18 months older).  But that is where the similarities end.  Minor, unlike D.D., was born without drugs in his system and hospital personnel reported no concerns about his well-being or Mother's interaction with him.  The Department was called nonetheless, and during the ensuing dependency proceedings, Mother reported she was not using methamphetamine, the Paternal Grandmother (who lived with Mother for a time) advised she had no concerns Mother was using drugs, Mother tested negative for methamphetamine use at least once per month (and never tested positive), and Mother completed a drug and alcohol program.  In addition, during all this time, Minor remained in Mother's care, and the Department documented no adverse effect on his health or well-being (including from Mother's admitted decision to feed Minor some baby cereal before that was apparently indicated)—

12

and certainly no harm or risk of harm that would appear to be attributable to methamphetamine use.

That, of course, leaves the drug tests that Mother did miss, but considering those missed tests in light of the entirety of her testing schedule and the other evidence in the record, we are not persuaded the missed tests provide a sufficient basis for dependency jurisdiction. Indeed, a contrary holding on this record would mean dependency jurisdiction would automatically attach to any subsequent children that are born to a parent who suffered a previous adverse substance abuse dependency finding—at least absent a perfect or near-perfect substance abuse testing record over the course of, perhaps, multiple years.[9] We cannot accept that view, particularly in light of our Supreme Court's recent emphasis that the touchstone for a substance abuse risk-based dependency finding (albeit one predicated on section 300, subdivision (b)(1) directly) is evidence of an inability to provide regular care that creates a substantial risk of physical harm or illness, not mere negative manifestations of drug abuse or questionable parenting decisions. (*N.R.*, *supra*, 15 Cal.5th at 540.)

We shall therefore reverse the juvenile court's finding of dependency jurisdiction. We caution, however, that the reversal is based on the state of the appellate record before us. If there have been significant developments concerning Minor's welfare or Mother's sobriety that post-date the December 2022 jurisdiction

---

[9]     As we have already recounted, the juvenile court opined methamphetamine was a drug that a parent could return to abusing after "years" of sobriety and stated it needed to be "very sure [Mother] can maintain her sobriety."

hearing from which this appeal is taken, our disposition will permit the juvenile court to take those into account.

DISPOSITION

The juvenile court's jurisdiction order is reversed. The cause is remanded with directions to hold a new jurisdiction hearing as soon as possible, consistent with the right of all sides to prepare their case. If, at the new jurisdiction hearing, there are no new significant developments (i.e., events or circumstances that did not exist at the time of the order under review in this appeal), the juvenile court shall enter a new and different order dismissing the July 18, 2022, dependency petition. If the court finds there are new developments that warrant a ruling other than dismissal of the July 18, 2022, dependency petition, the court shall make any necessary findings and orders and do so in a manner sufficient to permit appellate review of that conclusion.


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


BAKER, Acting P. J.

We concur:


MOOR, J.                                        LEE, J.[*]

_____

[*]     Judge of the San Bernardino County Superior Court, assigned by the Chief Justice pursuant to Article VI, section 6 of the California Constitution.